FILED

JAN 30 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

MICHAEL T. LEAHY
DC Bar No. 476062
BRIAN SEGEE
DC Bar No. 492098
Defenders of Wildlife
1130 17th Street, NW
Washington, DC 20036
(202) 682-9400, Fax (202) 682-1331
*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEFENDERS OF WILDLIFE,<br>1130 17th Street<br>Washington, D.C. 20036,<br><br>And<br><br>FOREST GUARDIANS,<br>312 Montezuma<br>Santa Fe, NM 87501<br><br>Plaintiffs,<br><br>vs.<br><br>GAIL KIMBELL, Chief, U.S. Forest Service, in her official<br>capacity; and U.S. FOREST SERVICE,<br>1400 Independence Ave., SW<br>Washington, D.C. 20250;<br><br>And<br><br>MIKE JOHANNS, Secretary, U.S. Department of<br>Agriculture, in his official capacity,<br>1400 Independence Ave., SW<br>Washington, D.C. 20250,<br><br>Defendants. | )<br>)<br>)<br>)  Case No.<br>)<br>)<br><br>CASE NUMBER  1:07CV00194<br><br>JUDGE: Richard J. Leon<br><br>DECK TYPE: Administrative Agency Rev<br><br>DATE STAMP: 01/30/2007<br><br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Complaint for Declaratory and Injunctive Relief

1

## INTRODUCTION

1. This case challenges Defendants' December 15, 2006 Final Rule "categorically excluding" the resource management decisions made and actions taken in National Forest management plans from analysis of their environmental impacts under the National Environmental Policy Act, ("NEPA"), 42 U.S.C. § 4321 *et seq*. National Environmental Policy Act Documentation Needed for Developing, Revising, or Amending Land Management Plans; Categorical Exclusion, 71 Fed. Reg. 75,481 (Dec. 15, 2006) ("Final Rule").

2. NEPA's implementing regulations strictly limit the use of "categorical exclusions" from environmental analysis to categories of actions that have been found to have no significant individual or cumulative environmental effect. *See* 40 C.F.R. § 1508.4. Defendants have failed to establish that forest management plans, in which myriad land allocations and resource management decisions are made, fall within this narrow exemption to NEPA's environmental analysis and public disclosure requirements.

3. Pursuant to the National Forest Management Act of 1976, the natural resources within each National Forest are managed in a National Forest management plan. *See generally* 16 U.S.C. § 1600 *et seq*. ("Forest Management Act"). A wide range of resource management decisions affecting lands and resources are made in forest management plans, including allocating all areas of the forest to specific uses; setting aside tracts as wilderness, wildlife habitat, stream buffers, roadless areas, or limited-access recreation zones (such as motorized or semi-primitive); authorizing, limiting, and prohibiting projects, practices, activities, and uses on all or parts of the forest based on compatibility with each area's management regime and mandatory protections for

Complaint for Declaratory and Injunctive Relief

resources such as soils and water; managing wildlife, through habitat set-asides, population protections, and other means; and determining the location and level of roads and trails and their use. *See, e.g.*, 16 U.S.C. § 1604(g)(3).

4. Since passage of the Forest Management Act more than thirty years ago, the Forest Service has, pursuant to NEPA, analyzed the environmental impacts of the important resource management decisions made in every final forest management plan through a full environmental impact statement ("EIS"), the most thorough level of NEPA analysis.

5. Defendants recently finalized regulations purporting to fundamentally alter forest management plans, instituting a self-described "paradigm shift in land management planning." National Forest System Land Management Planning, 70 Fed. Reg. 1023, 1024 (Jan. 5, 2005) (to be codified at 36 C.F.R. pt. 219) ("2005 Rule").

6. Subsequent to this purportedly fundamental change to the fabric of forest plans, but prior to considering the environmental impacts of any forest management plans written under the 2005 Rule except one draft grassland management plan, Defendants in their December 15, 2006 Final Rule unlawfully created a new "categorical exclusion" for forest management plans under NEPA.  Under this Final Rule, the environmental effects of the decisions made in forest management plans will no longer be considered, and local communities, public interest organizations, and the public at large will no longer be able to rely on this information or the meaningful opportunities to participate in National Forest management provided by NEPA.

7. Defendants, however, have failed to establish that forest management plans have no significant individual or cumulative effect on the environment.  Plaintiffs seek

declaratory and injunctive relief from this Court that Defendants' Final Rule was promulgated in violation of NEPA and its implementing regulations, and is arbitrary, capricious, without rational basis, without procedure required by law, and otherwise in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA").

## JURISDICTION, VENUE

8. Plaintiffs bring this action pursuant to the APA, 5 U.S.C. §§ 701-706. This Court has jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. § 1331 (federal question) and may issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201-02.

9. Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(e).

## PARTIES

10. Plaintiff DEFENDERS OF WILDLIFE ("Defenders") sues on behalf of itself and its members. Defenders is a non-profit conservation organization founded in 1947 and based in Washington, D.C., with offices across the country. Defenders has more than 500,000 members and supporters across the nation, in all 50 states. Defenders is dedicated to protecting and restoring all native wild animals and plants in their natural communities. Defenders and its members use National Forests and National Grasslands (which are managed by the Forest Service under the same laws, regulations, and rules as National Forests) for recreational, scientific, aesthetic, conservation, and commercial purposes. Defenders has a long history of involvement in the management of National Forests and Grasslands by participating in the development, revision, amendment, and implementation of forest management plans throughout the country, through the submission of comments, the filing of appeals and litigation, and other means.

Complaint for Declaratory and Injunctive Relief

Defenders' participation in National Forest management through forest management

plans depends on the public participation opportunities provided by NEPA, and on the

information on environmental effects analyzed and publicly disclosed through NEPA

environmental analyses. Defenders is currently participating in the NEPA and Forest

Management Act processes for revising National Forest and Grassland management plans

in the upper Great Lakes, northern Rockies, northern and southern California, Florida,

and the Great Plains from Nebraska south to Kansas.

11. Plaintiff FOREST GUARDIANS sues on behalf of itself and its members.

Forest Guardians is a non-profit corporation based in Santa Fe, New Mexico with an

office in Denver, Colorado. Forest Guardians has approximately 1,650 members. Forest

Guardians advocates for the restoration and preservation of native wildlife and the

ecosystems they inhabit, including forests, rivers, deserts, and grasslands in the western

United States. Forest Guardians' staff, board of directors, and members frequently visit

National Forests and Grasslands for recreational and educational purposes. Forest

Guardians is actively involved in a campaign to protect wildlife and wildlands in the

National Forests and National Grasslands. As part of this campaign, Forest Guardians

participates in the development of National Forest and Grassland management plans.

Forest Guardians is extensively involved in the management plan revision process for the

Cimarron and Comanche National Grasslands in Kansas and Colorado, respectively, by

attending and participating in public meetings, submitting comments during public

comment periods related to the plan revision process, and working individually with

Forest Service personnel. Forest Guardians is similarly involved with the writing of

management plans elsewhere in the southwest, including for the Dixie, Fishlake, and

Complaint for Declaratory and Injunctive Relief

- 5 -

Manti-La Sal National Forests in Utah; the Cibola National Forest in New Mexico; National Grasslands managed under the Cibola National Forest office that include the Black Kettle, Kiowa, McClellan Creek, and Rita Blanca; and National Forests in Arizona.

12. Plaintiffs and their members have long-standing interests in the National Forests and Grasslands; the wildlife and resources therein; the management plans by which they are managed; and the rules and regulations governing their management. Plaintiffs have a long history of participating in National Forest management, and advocating their interests in the National Forests, through the development, revision, and amendment of forest management plans. The adoption and revision of forest management plans is the agency action by which specific resources Plaintiffs care most about – including wildlife and their habitats – are managed. Plaintiffs are harmed by Defendants' illegal promulgation of the Final Rule eliminating the examination of the environmental impacts of the decisions made in forest management plans for managing wildlife, habitats, and other resources; and eliminating the public participation and disclosure processes formerly provided pursuant to NEPA. Plaintiffs are unable to obtain information on or address the impacts of the decisions in forest plans by participating only in project-level decisionmaking. Plaintiffs and their members have procedural and informational interests in understanding and evaluating the resource management decisions made in National Forest management plans through long-established NEPA procedures. Plaintiffs actively participated in forest management through the NEPA environmental impact analyses conducted on forest management plans prior to the Final Rule, and based their involvement on the public participation opportunities provided by

Complaint for Declaratory and Injunctive Relief

NEPA, and on information on the impacts of resource management actions generated and made public through NEPA processes.

13. Plaintiffs submitted comments in opposition to Defendants' proposed categorical exclusion at every opportunity provided.

14. Plaintiffs have no adequate remedy at law to address any of the foregoing injuries to their interests.

15. Defendant Abigail Kimbell is the Chief of the U.S. Forest Service, an agency within the U.S. Department of Agriculture. Defendant Kimbell is sued in her official capacity.

16. Defendant U.S. Forest Service is an agency within the U.S. Department of Agriculture that is charged with administration of the National Forest System.

17. Defendant Mike Johanns is the Secretary of the U.S. Department of Agriculture ("USDA"). Defendant Johanns is sued in his official capacity.

## NATIONAL FOREST MANAGEMENT ACT

18. The 192-million-acre National Forest System includes 155 National Forests (averaging over 1.2 million acres each) and 22 National Grasslands in 42 states covering approximately 8 percent of the United States landscape. A wide range of habitats and ecosystems are represented in the National Forest System, including boreal forests, prairie grasslands, temperate and tropical rain forests, mountains, eastern hardwood forests, bald cypress swamps, and many others. National Forests harbor much of the nation's biological diversity, supporting more than 3,000 species of birds, mammals, reptiles, fish, and amphibians, and more than 10,000 plant species, including 17 percent of federally-listed endangered and threatened species (over 230 species), and more than

Complaint for Declaratory and Injunctive Relief

2,000 species designated as sensitive. More intact populations of rare species can be found in National Forests than in any other U.S. public land system. Many of the remaining large blocks of relatively unfragmented habitats critical to the continued existence of many large mammals in the United States, including grizzly bears, wolves, wolverines, lynx, elk, and bighorn sheep, are located in National Forests. Water flowing from National Forests supplies many of the nation's communities and rivers.

19. Congress enacted the National Forest Management Act, 16 U.S.C. § 1600 *et seq.*, in 1976 to reform Forest Service management of the National Forests, primarily by giving the public a say in how their forests are managed; increasing Forest Service accountability to the public; requiring greater recognition of non-timber resources; and instituting certain resource protections, such as limitations on clearcut logging practices.

20. Congress' main reform mechanism was to require the resources on each National Forest to be managed through a "land and resource management plan" ("forest management plan") that meets specific resource management standards, is written with extensive public involvement, and to which the public can hold forest managers accountable. 16 U.S.C. § 1604.

21. Congress established specific direction for the management of certain resources in forest management plans. 16 U.S.C. § 1604(g)(3). For example, each management plan must provide for the diversity of plant and animal communities on the forest (§ 1604(g)(3)(B)); restrict logging to avoid irreversible damage to soils, slopes, and watersheds, and detrimental changes to waterways, wetlands, and riparian areas (§ 1604(g)(3)(E)); restrict clearcutting and other even-aged logging practices (*i.e.*, those that remove all or nearly all of the trees) and limit the size and regulate the shape of areas

Complaint for Declaratory and Injunctive Relief

logged under even-aged methods (§ 1604(g)(3)(F)); and determine the suitability of National Forest lands for resource management (§ 1604(g)(2)(A)). Standards and guidelines for managing these and other resources under the Forest Management Act must be incorporated into forest management plans. 16 U.S.C. § 1604(c).

22. The resources on each National Forest are managed in a variety of ways in forest management plans according to these and other requirements. For example, forest management plans allocate every acre of the forest to specific uses, determining whether, to what extent, and how specific forest areas will be logged, grazed, or mined. Forest management plans direct whether management of each part of the forest will include or exclude road construction, off-road vehicle driving, and other motorized recreation, and the levels of these activities that can occur in each part of the forest. Forest management plans set which areas will be protected for wilderness resources. Wildlife management is done directly in forest management plans, including through species management, monitoring, and protections such as for habitats, nests, dens, and individuals. And forest management plans establish protections against damage to soils and waters, such as by setting aside stream buffers and steep or fragile slopes, restricting clearcuts, and placing other limitations on logging. *See, e.g.*, 16 U.S.C. § 1604(g)(3).

23. Congress ensured that decisions and land allocations made in forest management plans would be carried out on the ground by requiring that all activities on the forest be consistent with the governing forest plan. 16 U.S.C. § 1604(i) ("Resource plans and permits, contracts, and other instruments for the use and occupancy of National Forest System lands shall be consistent with the land management plans."); *see also* 16

U.S.C. § 1601(d)(1) (National Forests shall be maintained "in accordance with land management plans.").

24. Prior to January 5, 2005, forest management plans were written, revised, amended, and implemented according to the Forest Management Act regulations of September 30, 1982. *See* National Forest System Land and Resource Management Planning, 47 Fed. Reg. 43,026 (Sept. 30, 1982) (to be codified at 36 C.F.R. pt. 219) ("1982 Rule") (Two other sets of regulations governing forest management plans were written but were never substantially implemented and therefore are not addressed in this complaint. *See* 44 Fed. Reg. 53,928 (Sept. 17, 1979); National Forest System Land and Resource Management Planning, 65 Fed. Reg. 67,514 (to be codified at 36 C.F.R. pts. 217 and 219) (Nov. 9, 2000)).

25. In December 2002, Defendants proposed a revision of the Forest Management Act regulations, including for the first time their proposal to "categorically exclude" forest management plans from NEPA. *See* National Forest System Land and Resource Management Planning, 67 Fed. Reg. 72,770, 72,797 (Dec. 6, 2000) (to be codified at 36 C.F.R. pt. 219, 219.6(b)).

26. Defendants finalized their revised regulations for forest management plans on January 5, 2005. 70 Fed. Reg. 1023. According to Defendants, this 2005 Rule "embodies a paradigm shift in land management planning." *Id.*, at 1024.

27. Consistent with Defendants' characterization of their 2005 Rule as a "paradigm shift" in forest management, management plans developed under the 2005 Rule will differ in significant, fundamental ways from those written under the 1982 Rule. The 2005 Rule, for example, fundamentally changes how wildlife is managed in forest

plans. The 1982 Rule applied species specific management, requiring each forest

management plan to maintain "viable populations" of wildlife, and to verify that the

Forest Service is meeting this requirement by monitoring representative species. 36

C.F.R. § 219.19. The 2005 Rule, in contrast, eliminates the viability requirement, and

instead makes management of individual species optional. 36 C.F.R. § 219.10(b)

28. The 2005 Rule also requires management plans, revisions, and amendments to

be completed and implemented in accordance with a new requirement called an

"environmental management system" ("EMS"). *See* 70 Fed. Reg. 1056 (Jan. 5, 2005) (to

be codified at 36 C.F.R. § 219.5). The EMS will be a core element of the new forest

management plans, influencing specific projects as well as changes to the plan itself. S*ee,*

*e.g.*, 70 Fed. Reg. 1030 ("EMS will provide a foundation for effective adaptive

management, plan amendments, or even changing specific project or work practices"); 70

Fed. Reg. 1023-1061 generally. This fundamentally new approach to forest management

plans is barely explained in the 2005 Rule or anywhere else.

29. Defendants, however, did not finalize their proposed new categorical

exclusion for forest management plans within the 2005 Rule. Defendants instead

bifurcated their original proposed rule, and provided for an additional separate public

comment period on the proposed categorical exclusion. National Environmental Policy

Act Documentation Needed for Developing, Revising, or Amending Land Management

Plans; Categorical Exclusion; Final Rules and Notice, 70 Fed. Reg. 1062-66 (Jan. 5,

2005).

30. Defendants finalized and promulgated their Final Rule categorically excluding forest management plans, revisions, and amendments from NEPA on December 15, 2006. 71 Fed. Reg. 75,481.

31. Only six forest management plans had been drafted under the 2005 Rule when Defendants published their Final Rule. The managers of five of these forests did no NEPA analysis on their draft management plans, despite the fact that the categorical exclusion for forest management plans had not yet been finalized. At least three of these forest managers very clearly told the public as early as April, 2006 that Defendants' categorical exclusion had been finalized when it had not been:

> Under the 2005 Planning Rule, land management plans are not required to have an accompanying environmental impact statement (EIS) or environmental assessment (EA) prior to adoption. A plan, plan amendment, or plan revision may be categorically excluded (CE) from documentation in an EIS or EA.

*See, e.g.*, http://www.fs.fed.us/r1/wmpz/documents/proposed-plans/plan_documents/lnf/2lnf_plan_intro_nolinks.pdf, p. 6 (identical language in all three draft management plans). Plaintiffs and their members have already been denied the information on environmental impacts, and the public participation opportunities, that NEPA would have provided but for the Final Rule and its premature application, information and opportunities that would have, for example, allowed them to assess, consider alternatives to, and influence decisions in these plans affecting grizzly bears, such as how much habitat is set aside and how much opened for motorized recreation.

32. Of the six, only the Comanche-Cimarron National Grassland did any NEPA environmental analysis of its draft management plan. *See* 70 Fed. Reg. 77,373 (December 30, 2005). However, this NEPA analysis was a cursory environmental assessment rather

Complaint for Declaratory and Injunctive Relief

than the environmental impact statement that lawfully should be completed for a forest or grassland management plan.

33. This one environmental assessment - on a management plan addressing grassland resources - is the sole documentation Defendants can point to as support for their conclusion that all forest management plans written, revised, or amended under the 2005 Rule will have no environmental effects and therefore should be categorically excluded from NEPA. 71 Fed. Reg. 75,488.

34. Defendants' only additional justification for the Final Rule is a review of forest management plans written under the very different 1982 Rule, *id.* at 75,487-88, and a discussion of wholly unrelated U.S. Fish and Wildlife Service recovery plans for federally threatened and endangered species. *Id.* at 75,483-84.

## NEPA

35. NEPA is "our basic national charter for protection of the environment." 40 C.F.R. § 1500.1.

36. NEPA's purposes are twofold, to "insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken", and to "help public officials make decisions that are based on understanding of environmental consequences, and take actions that protect, restore, and enhance the environment." *Id.* at 1500.1(b, c)

37. NEPA requires a formal statement on the environmental impact of all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C).

38. "Major federal actions" include all those "with effects that may be major," including new or revised agency "plans, policies, or procedures," and "[a]doption of formal plans, such as official documents prepared or approved by federal agencies which guide or prescribe alternative uses of Federal resources, upon which future agency actions will be based." 40 C.F.R. § 1508.18.

39. The effects of an action that must be analyzed under NEPA include direct and indirect effects, including those that are "later in time or farther removed in distance, but are still reasonably foreseeable." 40 C.F.R. § 1508.8. Indirect effects also include "effects related to induced changes in the pattern of land use . . . and related effects on air and water and other natural systems, including ecosystems." 40 C.F.R. § 1508.8(b).

40. Impacts that must be analyzed through NEPA also include cumulative impacts, defined as "the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions . . .." 40 C.F.R. § 1508.7.

41. NEPA regulations set up a system for "tiering" the environmental analyses required at various levels of federal decisionmaking. For example, the environmental impact statements required of broader federal actions, including programs, plans, and policies, can be used to inform (and facilitate the efficiency of) the analysis also required of site-specific projects. 40 C.F.R. § 1508.28; 40 C.F.R. § 1502.20.

42. Analysis of environmental impacts under NEPA must occur at the earliest possible time. 40 C.F.R. § 1501.2 ("Agencies shall integrate the NEPA process with other planning at the earliest possible time to insure that planning and decisions reflect

environmental values, to avoid delays later in the process, and to head off potential conflicts.").

43. Forest Management Act regulations in place prior to the 2005 Rule complied with NEPA by requiring an EIS on the impacts of each forest management plan prior to approval. *See* 36 C.F.R. § 219.10(b) (1982); *see also* former 36 C.F.R. § 219.9(d) (2000).

44. The Council on Environmental Quality ("CEQ") is an agency created by Congress to administer NEPA and promulgate NEPA regulations binding on all federal agencies. *See* 42 U.S.C. §§ 4342, 4344; 40 C.F.R. § 1500 *et seq.*

45. CEQ wrote into the NEPA regulations an exemption from NEPA analysis for limited categories of minor activities that agencies have proven to have no significant effects on the human environment. These "categorical exclusions", or "CEs", are allowed for a "category of actions which do not individually or cumulatively have a significant effect on the human environment . . .." 40 C.F.R. § 1508.4; *see also* 40 C.F.R. § 1501.4(a)(2).

46. Categories of actions excluded from NEPA must "*have been found* to have no such effect." 40 C.F.R. § 1508.4 (emphasis added); *see also* 40 C.F.R. § 1507; Guidance Regarding NEPA Regulations, 48 Fed. Reg. 34,263 (July 28, 1983) ("Section 1507 of the CEQ regulations directs federal agencies when establishing implementing procedures to identify those actions which *experience has indicated* will not have a significant environmental effect and to categorically exclude them from NEPA review.") (emphasis added).

47. Relevant environmental documents must be part of the record supporting agency decisions on implementing NEPA. *See* 40 C.F.R. § 1505.1

48. CEQ created CEs so agencies could "reduce delay" by identifying categories of actions too insignificant to warrant even basic environmental analysis. *See* 43 Fed. Reg. 55,978, 55,979 (Nov. 29, 1978).

49. The Department of Agriculture has construed the CE provision narrowly, as excluding from NEPA review "routine" actions of "limited size and magnitude." *See* 46 Fed. Reg. 56,998, 56,999-57,000 (Nov. 19, 1981); 67 Fed. Reg. 54,622, 54,624 (Aug. 23, 2002).

50. CEs generally exempt from NEPA routine actions with clearly *de minimus* environmental impacts, such as "[c]losing a road to protect bighorn sheep during lambing season;" "[m]owing lawns at a District office;" "[p]ainting a building;" and "[a]pplying herbicides to control poison ivy on infested sites in a campground." Forest Service Handbook ("FSH") ch. 30, §§ 31.12(1)(a) & 3(a) & 5(a).

51. The class of CEs to which the new forest management plan CE is added is for "routine, proposed actions" such as modifying a trail to allow handicapped access; replacing telephone wires; approval of mailboxes and other minor uses of less than five acres; and thinning brush. FSH 1909.15, ch. 30, § 31.2.

52. Defendants have recently greatly expanded the number and size of timber sales and other projects that are categorically excluded from NEPA analysis, although none of these expansive CEs approach the magnitude of the new forest management plan CE. *See, e.g.,* 68 Fed. Reg. 33,814 (June 5, 2003) (establishing CE for logging up to 1000 acres); 68 Fed. Reg 44,598 (July 29, 2003) (establishing CE for logging up to 250 acres).

53. Having granted itself greatly expanded authority to exempt increasingly large and numerous timber sales from NEPA, the Forest Service now categorically excludes

Complaint for Declaratory and Injunctive Relief

72% of its forest management projects from NEPA, projects which covered 2.9 million

acres from 2003 to 2005. *See* http://www.gao.gov/new.items/d0799.pdf. Under the

December 15, 2006 Final Rule, the Forest Service will now also categorically exclude

forest management plans from NEPA analysis. This means that the individual, and

cumulative, impacts of nearly three quarters of Defendants' projects, encompassing

millions of acres, will *never* be evaluated, because they are categorically excluded from

NEPA at the project level, and are now categorically excluded from NEPA at the plan

level.

54. CEs are not allowed when "extraordinary circumstances" exist such that "a

normally excluded action may have significant environmental effect." 40 C.F.R. §

1508.4.

55. Most National Forests include all or nearly all of the "extraordinary

circumstances" the Forest Service identifies in its handbook. *See* FSH 1909.15, ch.

30.3(2)(a-g)) (steep slopes or highly erosive soils; threatened and endangered species or

their habitat; flood plains, wetlands, or municipal watersheds; National Recreation Areas;

inventoried roadless areas; Research Natural Areas; and Native American religious or

cultural sites, and archeological sites.).

## ADMINISTRATIVE PROCEDURE ACT

56. The APA provides for judicial review of "final agency action." 5 U.S.C. §

704.

57. An "agency action" subject to judicial review, as defined in the APA,

"includes the whole or part of an agency rule . . .." 5 U.S.C. §§ 551(13), 701(2).

58. A "rule" as defined in the APA includes "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency . . .." 5 U.S.C. §§ 551(4), 701(2).

59. Courts shall "hold unlawful and set aside" agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law." 5. U.S.C. § 706(2).

## CLAIM FOR RELIEF

### Violations of NEPA and APA

60. Plaintiffs re-allege, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

61. The promulgation of the Final Rule is a final agency action subject to judicial review under the APA. 5 U.S.C. § 704.

62. NEPA requires a formal statement on the environmental impact of all "major Federal actions significantly affecting the quality of the human environment," 42 U.S.C. § 4332(C), including plans such as forest management plans. 40 C.F.R. § 1508.18.

63. The National Forest Management Act requires forest management plans that have an actual effect on the resources on National Forests. *See generally* 16 U.S.C. § 1600 *et seq.*; 16 U.S.C. § 1604(g)(3).

64. In contravention of these mandates, Defendants promulgated the Final Rule categorically excluding forest management plans from NEPA based on a "paradigm shift" in forest management plans purportedly brought about by the 2005 Rule.

Complaint for Declaratory and Injunctive Relief

Defendants, however, failed to establish in the Final Rule that forest management plans have no significant individual or cumulative effect on the human environment as required by 40 C.F.R. § 1508.4, and failed to base their Final Rule on any analysis of or experience with forest management plans written under the 2005 Rule other than one draft grassland management plan.

65. The Final Rule was promulgated in violation of NEPA, NEPA regulations, and the APA, 5 U.S.C. § 701 *et seq.* The Rule has no rational or substantial basis in the record, and is arbitrary, capricious, an abuse of discretion, not in accordance with law, without observance of procedure, and otherwise promulgated in violation of the APA, 5 U.S.C. § 706(2).

## REQUEST FOR RELIEF

Therefore, Plaintiffs request that this Court:

1. Hold unlawful and set aside Defendants' December 15, 2006 Final Rule pursuant to 5 U.S.C. § 706;

2. Enter a declaratory judgment that Defendants' Final Rule violates NEPA;

3. Enter a declaratory judgment that Defendants violated NEPA and the Administrative Procedure Act in promulgating the Final Rule;

4. Enjoin Defendants from applying or otherwise relying upon the Final Rule;

5. Award plaintiffs their reasonable fees, costs, and expenses, including attorneys' fees, associated with this litigation; and

6. Grant plaintiffs such further and additional relief as the Court may deem just and proper.

Complaint for Declaratory and Injunctive Relief

DATED: January 29, 2007

Respectfully submitted,

/s/  Michael T. Leahy
MICHAEL T. LEAHY
DC Bar No. 476062

/s/  Brian P. Segee
BRIAN SEGEE
DC Bar No. 492098

Defenders of Wildlife
1130 17th Street, NW
Washington, DC 20036-4604
Tel. (202) 682-9400
Fax (202) 682-1331
*Counsel for Plaintiffs*

Complaint for Declaratory and Injunctive Relief

C
07-194
RJL

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| DEFENDERS OF WILDLIFE; FOREST GUARDIANS | GALE KIMBELL, Chief, U.S. Forest Service; U.S. FOREST SERVICE; MIKE JOHANNS, Secretary, U.S. Department of Agriculture |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    District of Columb
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Mike Leahy
Brian Segee
Defenders of Wildlife
1130 Seventeenth Street, N.W.
Washington, D.C.
(202) 682-9400; Fax (202) 682-1331

CASE NUMBER   1:07CV00194

JUDGE: Richard J. Leon

DECK TYPE: Administrative Agency Rev

DATE STAMP: 01/30/2007

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ⊙ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZ
FOR PLAIN

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| ○ A. *Antitrust* | ○ B. *Personal Injury/ Malpractice* | ⊙ C. *Administrative Agency Review* | ○ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☒ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. *General Civil (Other)* | OR | ○ F. *Pro Se General Civil* | |
|---|---|---|---|

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans<br>(excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Final rule promulgated in violation of NEPA, 42 USC 4321 et seq, and APA, 5 U.S.C. 701-706

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** _____ Check YES only if demanded in complaint<br>**JURY DEMAND:** YES ☐  NO ☒ |
|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE   January 29, 2007    SIGNATURE OF ATTORNEY OF RECORD   *Michael V Leal*

*30*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.